# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## No. 14-6435
_____

## UNITED STATES OF AMERICA

**Plaintiff-Appellee,**

**v.**

## JOSEPH MICHAEL GUARASCIO

**Defendant-Appellant.**

_____

## INFORMAL OPENING BRIEF
## (REQUEST FOR CERTIFICATE OF APPEALABILITY)
_____

**THE LAW OFFICE OF**
**WILLIAM MALLORY KENT**

**WILLIAM MALLORY KENT**
**Fla. Bar No. 0260738**
**1932 Perry Place**
**Jacksonville, Florida 322027**
**904-398-8000 Telephone**
**904-348-3124 Fax**
**kent@williamkent.com**

**Counsel for Defendant-Appelant**
**JOSEPH MICHAEL GUARASCIO**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE AND FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ARGUMENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I.      THIS COURT SHOULD ISSUE A CERTIFICATE OF APPEALABILITY
        TO DETERMINE WHETHER GUARASCIO IS ENTITLED TO A POST-
        CONVICTION REMEDY FOR THE THREE GROUNDS RAISED
        HEREIN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

A.      STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

B.      GUARASCIO SATISFIES THE STANDARD FOR ISSUING A
        CERTIFICATE OF APPEALABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . 30

II.     THE DISTRICT COURT ERRONEOUSLY DENIED GUARASCIO'S
        MOTION FOR RELIEF UNDER 28 U.S.C. § 2255.. . . . . . . . . . . . . . . . 31

A.      STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B.      GROUND ONE:  GUARASCIO RECEIVED INEFFECTIVE
        ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO
        ADVISE GUARASCIO THAT THERE WERE STRONG GROUNDS
        UPON WHICH TO FILE A MOTION TO SUPPRESS THE CHILD
        PORNOGRAPHY ("CP") SEIZED FROM GUARASCIO, WHICH

i

SERVED AS THE BASIS OF THE CHARGE TO WHICH HE PLED GUILTY,  AND HAD COUNSEL PROPERLY EXPLAINED THE APPLICATION OF THE GOVERNING SUPPRESSION LAW TO THE FACTS OF HIS CASE, GUARASCIO WOULD HAVE INSISTED ON FILING A MOTION TO SUPPRESS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

THE DISTRICT COURT'S ORDER DENYING RELIEF ON GROUND ONE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

C.    GROUND TWO: GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO OF HIS RIGHT TO CHALLENGE THE APPLICATION OF THE CHARGING STATUTE TO HIM ON THE UNIQUE FACTS OF HIS CASE ON RIGHT TO PRIVACY GROUNDS, AND HAD HE DONE SO, GUARASCIO WOULD HAVE INSISTED ON FILING AN APPROPRIATE MOTION CHALLENGING THE CHARGE ON PRIVACY GROUNDS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

THE DISTRICT COURT'S ORDER DENYING RELIEF ON GROUND TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

D.    GROUND THREE: GUARASCIO IS ACTUALLY INNOCENT OF THE CHARGED OFFENSE, 18 U.S.C. § 2251(a) AND (d), BECAUSE AN ESSENTIAL ELEMENT OF THIS OFFENSE IS THAT EITHER (1) THE DEFENDANT KNEW OR HAD REASON TO KNOW THAT THE VISUAL DEPICTION WOULD BE TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE (AND IF CHARGED UNDER THE KNOWN OR HAD REASON TO KNOW PRONG, THE VISUAL DEPICTION HAD TO ALSO HAVE BEEN PRODUCED OR TRANSMITTED USING MATERIALS THAT HAD MOVED IN INTERSTATE COMMERCE), OR (2) THE VISUAL DEPICTION IN FACT ACTUALLY WAS TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE, AND NEITHER ALTERNATIVE WAS

SATISFIED IN GUARASCIO'S CASE, AND GUARASCIO'S COUNSEL
WAS INEFFECTIVE IN FAILING TO OBJECT TO THE CHARGE ON
THIS BASIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

THE DISTRICT COURT'S ORDER DENYING RELIEF ON GROUND
THREE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

CERTIFICATE OF FILING AND SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . 68

# TABLE OF AUTHORITIES

## CASES

*Franks v. Delaware*, 438 U.S. 154 (1978). . . . . . . . . . . . . . . . . . 32, 35, 37, 38, 41

*Gomez v. Dretke*, 422 F.3d 264 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 30

*Gonzalez v. Raich*, 545 U.S. 1 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 51

*Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). . . . 44, 52

*Hill v. United States*, 368 U.S. 424, 428 (1962). . . . . . . . . . . . . . . . . . . . . . . . . 31

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . . . 61

*Johnson v. Singletary*, 938 F.2d 1166, 1175 (11ᵗʰ Cir. 1991). . . . . . . . . . . . . . . 55

*Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) . . . 50, 54

*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). . . . . . . . . . . . . . . . . . . . . . . 50, 54

*Murray v. Carrier*, 477 U.S. 478 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Osborne v. Ohio*, 495 U.S. 103 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). . . . . . . 51

*Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. Addonizio*, 442 U.S. 178 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Bach*, 400 F.3d 622 (8ᵗʰ Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Bell*, 5 F.3d 64, 68 (4ᵗʰ Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Corp*, 236 F.3d 325 (6th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 57

*United States v. Crews*, 28 Fed.Appx. 247, 2002 WL 86843 (4th Cir. 2002) . . . . 15

*United States v. Fulks*, 683 F.3d 512, 516 (4th Cir. 2012). . . . . . . . . . . . . . . 60, 61

*United States v. Husband*, 119 Fed.Appx. 475, 2005 WL 44942 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). . . 60

*United States v. Reivich*, 793 F.2d 957, 961 (4th Cir. 1986). . . . . . . . . . . . 38, 39, 44

*United States v. Shorter*, 328 F.3d 167 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . 37

*United States v. Smith*, 795 F.2d 841, 845 (9th Cir.1986). . . . . . . . . . . . . . . . . . 35

*United States v. White*, 2 Fed.Appx. 295, 2001 WL 51014 (4th Cir. 2001). . . . . . 57

*United States v. Windsor*, 133 S.Ct. 2675 (2013). . . . . . . . . . . . . . . . . . . . . . . . . 51

*Virginia v. Black*, 538 U.S. 343 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. 2497, 2508 (1977). . . . . . . . . . . . 51

**STATUTES**

18 U.S.C. § 2251(a), (d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2253(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2253(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 26

v

N. C. General Statutes, § 14-202.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

N.C. General Statutes, § 14-190.14.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

N.C. General Statutes, § 14-27.7A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**RULES**

Federal Rule of Appellate Procedure 22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rule 11 of the Rules Governing Section 2255 Proceedings.. . . . . . . . . . . . . . . . 30

**CONSTITUTIONAL PROVISIONS**

Commerce Clause, Article I, Section 8, clause 3 . . . . . . . . . . . . . . . . . . . . . . . . 59-62

Right of Privacy Guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth
Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sixth Amendment to the United States Constitution. . . . . . . . . . . . . . . . . . . . . . . 4

## INTRODUCTION

This case presents three very interesting issues in the context of a request for certificate of appealability of a summary denial of a habeas petition filed under 28 U.S.C. § 2255.  Guarascio pled guilty to a one count information charging him with manufacturing child pornography, but this is unlike any child pornography case this Court has ever seen, because the undisputed facts were that Guarascio was involved in a consensual and perfectly lawful relationship with a 17 year old girlfriend (under North Carolina law it is lawful for an a person over age 18 to have sexual relations with a person 17 years old) and the two of them made some very short video clips of themselves making love in their bedroom.  The video clips remained on the video camera which in turn remained in the couple's bedroom.  The video clips never moved outside the privacy of the bedroom in Guarascio's home and there was no evidence of any intent to ever transmit the video in interstate commerce.  On this factual basis Guaracio was charged with manufacturing child pornography.

The Government obtained the video clips which were the sole basis of the federal prosecution as the result of the execution of a series of *state* search warrants which rather plainly on their face lacked probable cause.  Despite the facial invalidity of the search warrants that led to the only evidence to support the charge, in other words, in spite the availability of a *dispositive motion to suppress*, Guarascio's trial

counsel *filed no motion to suppress*, but instead counseled Guarascio to plead guilty to this fifteen year minimum mandatory charge.    Not only did he not file such a motion, *he never even discussed the possibility with Guarascio*.

Guarascio argues that it was ineffective assistance of counsel for his trial counsel to not advise him of the availability of this legal defense, and had he known, he would not have pled guilty but would have insisted on asserting the motion to suppress.

Additionally, the facts of the case cried out for an argument to have been made that Guarascio's constitutional right of privacy prohibited prosecution.  Guarascio had a constitutionally protected associational interest recognized and sanctioned by the State of North Carolina to have and enjoy a sexual relationship with his 17 year old girlfriend and so long as his conduct remained in the privacy of the bedroom in his own home, he could not be prosecuted for making a video clip of activity which the State of North Carolina sanctioned, at least so long as that video clip remained in the privacy of his own bedroom, as it did.  Guarascio's trial counsel was ineffective for not advising Guarascio of this legal defense.  Guarascio need not demonstrate that the defense would have been endorsed by the Court, he need only show that had he been advised of this defense he would have insisted on asserting it rather than pleading guilty, and that is exactly what he argued below.

2

Finally, Guarascio argues that the statute under which he was prosecuted requires more than that the medium by which the image was made have been transported in interstate commerce, rather the subsection of the statute he was prosecuted under requires proof that the video itself have been transported or intended to have been transported in interstate commerce, and because there was no such evidence - the video was never transported in interstate commerce nor was there any intent that it do so - Guarascio is actually factually and legally innocent of the charge.

Each of these three issues merits encouragement for further development and merits issuance of a certificate of appealability.

## JURISDICTIONAL STATEMENT

Guarascio appeals from an Order filed in the United States District Court for the Eastern District of North Carolina on February 5, 2014, dismissing his motion for relief under 28 U.S.C. § 2255. The district court declined to issue a certificate of appealability. [Doc. 47] Guarascio timely filed his Notice of Appeal on March 20, 2014. [Doc. 49] This Court has jurisdiction under 28 U.S.C. § 1291 and and  28 U.S.C. § 2253(c)(1)(B), and the district court had jurisdiction under 28 U.S.C. § 2255.

# STATEMENT OF THE ISSUES

GROUND ONE:   GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL[1] DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO THAT THERE WERE STRONG GROUNDS UPON WHICH TO FILE A MOTION TO SUPPRESS THE CHILD PORNOGRAPHY ("CP") SEIZED FROM GUARASCIO, WHICH SERVED AS THE BASIS OF THE CHARGE TO WHICH HE PLED GUILTY,  AND HAD COUNSEL PROPERLY EXPLAINED THE APPLICATION OF THE GOVERNING SUPPRESSION LAW TO THE FACTS OF HIS CASE, GUARASCIO WOULD HAVE INSISTED ON FILING A MOTION TO SUPPRESS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.

GROUND TWO: GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO OF HIS RIGHT TO CHALLENGE THE APPLICATION OF THE CHARGING STATUTE TO HIM ON THE UNIQUE FACTS OF HIS CASE ON RIGHT TO PRIVACY GROUNDS, AND HAD HE DONE SO, GUARASCIO WOULD HAVE INSISTED ON FILING AN APPROPRIATE MOTION CHALLENGING THE CHARGE ON PRIVACY GROUNDS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.

[GROUND THREE ON FOLLOWING PAGE]

---

[1] Whenever used herein, the term "ineffective assistance of counsel" refers to the failure to provide effective assistance of counsel guaranteed Joseph Guarascio under the Sixth Amendment to the United States Constitution.

GROUND THREE: GUARASCIO IS ACTUALLY INNOCENT OF THE CHARGED OFFENSE, 18 U.S.C. § 2251(a) AND (d), BECAUSE AN ESSENTIAL ELEMENT OF THIS OFFENSE IS THAT EITHER (1) THE DEFENDANT KNEW OR HAD REASON TO KNOW THAT THE VISUAL DEPICTION WOULD BE TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE (AND IF CHARGED UNDER THE KNOWN OR HAD REASON TO KNOW PRONG, THE VISUAL DEPICTION HAD TO ALSO HAVE BEEN PRODUCED OR TRANSMITTED USING MATERIALS THAT HAD MOVED IN INTERSTATE COMMERCE), OR (2) THE VISUAL DEPICTION IN FACT ACTUALLY WAS TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE, AND NEITHER ALTERNATIVE WAS SATISFIED IN GUARASCIO'S CASE, AND GUARASCIO'S COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE CHARGE ON THIS BASIS.

## STATEMENT OF THE CASE AND FACTS

This is a request for a certificate of appealability ("COA") from a denial of a timely filed federal habeas petition filed pursuant to 28 U.S.C. § 2255, in the United States District Court for the Eastern District of North Carolina, Southern Division, James C. Dever, III, United States District Court Judge.

## BACKGROUND

On September 21, 2009, Guarascio pleaded guilty to a one-count criminal information that charged him manufacturing child pornography, in violation of 18 U.S.C. § 2251(a), (d). See [Doc. 1, 6, 8]; see also Arraignment Tr. [Doc. 16]. Before and at the time of his guilty plea, attorney Mark Edwards ("Edwards") represented Guarascio. On February 9, 2010, represented at sentencing by new counsel (not the current habeas counsel), Guarascio was sentenced to 180 months' imprisonment. See [Doc. 22-23]. Guarascio did not appeal.

Thereafter Guarascio filed a timely habeas petition for relief under 28 U.S.C. § 2255, raising three grounds:

GROUND ONE: GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO THAT THERE WERE STRONG GROUNDS UPON WHICH TO FILE A MOTION TO SUPPRESS THE CHILD PORNOGRAPHY ("CP") SEIZED FROM GUARASCIO, WHICH SERVED AS THE BASIS OF THE CHARGE TO WHICH HE PLED GUILTY, AND HAD COUNSEL PROPERLY EXPLAINED THE APPLICATION OF THE GOVERNING SUPPRESSION LAW TO THE FACTS OF HIS CASE, GUARASCIO WOULD HAVE INSISTED ON FILING A MOTION TO SUPPRESS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.

GROUND TWO: GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO OF HIS RIGHT TO CHALLENGE THE APPLICATION OF THE CHARGING STATUTE TO HIM ON THE UNIQUE FACTS OF HIS CASE ON RIGHT TO PRIVACY GROUNDS, AND HAD HE DONE SO, GUARASCIO WOULD HAVE INSISTED ON FILING AN APPROPRIATE MOTION CHALLENGING THE CHARGE ON PRIVACY GROUNDS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.

GROUND THREE: GUARASCIO IS ACTUALLY INNOCENT OF THE CHARGED OFFENSE, 18 U.S.C. § 2251(a) AND (d), BECAUSE AN ESSENTIAL ELEMENT OF THIS OFFENSE IS THAT EITHER (1) THE DEFENDANT KNEW OR HAD REASON TO KNOW THAT THE VISUAL DEPICTION WOULD BE TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE (AND IF CHARGED UNDER THE KNOWN OR HAD REASON TO KNOW PRONG, THE VISUAL DEPICTION HAD TO ALSO HAVE BEEN PRODUCED OR TRANSMITTED USING MATERIALS THAT HAD MOVED IN INTERSTATE COMMERCE), OR (2) THE VISUAL DEPICTION IN FACT ACTUALLY WAS TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE, AND NEITHER ALTERNATIVE WAS SATISFIED IN GUARASCIO'S CASE, AND

GUARASCIO'S COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE CHARGE ON THIS BASIS.

**FACTS IN SUPPORT OF GROUND ONE**[2]

October 21, 2008 a female child, date of birth December 28, 1993 (hereinafter "KCA"), alleged to officers of the New Hanover, North Carolina Sheriff's Office, that she had engaged in consensual sexual activity with Joseph Guarascio (hereinafter "JG" or Guarascio or the Defendant). She claimed that a 17 year old friend (hereinafter "KH"), had been present and witnessed the activity. She claimed that this had taken place in the early morning hours of October 18, 2008 at JG's residence, located at 6617 Lipscomb Drive, Wilmington, N.C. (the "residence").

Based on this report, officers conducted further investigation, which included a lengthy interview of KH. KH denied KCA's allegation of sexual activity between JG and KCA.

Despite this denial of the person who KCA had said would corroborate the allegation, on October 23, 2008 these officers submitted an affidavit for a search warrant to a state magistrate judge, in which the allegation of sexual conduct between KCA and JG was repeated, as well as the allegation that KH had witnessed the sexual

_____

[2] The Facts in Support of each of the three grounds in the 2255 petition set forth herein were sworn to by Guarascio in both the petition itself and in a supporting memorandum of law and are taken verbatim from the sworn statement of facts below. [Doc. 28, Doc. 29]

activity between the two. The affidavit swore that "all persons interviewed appeared credible and truthful," and further swore that "no significant contradictions or differences exhist (*sic*) in the information the applicant has received from the person(s) interviewed."

The October 23, 2008 affidavit in support of the October 23, 2008 search warrant for the residence contained nothing that would support a seizure of any computer equipment or digital media,[3] yet the search warrant purported to authorize the seizure of digital media, computer equipment, including hard drives and jump

---

[3] The focus of the probable cause affidavit was a detailed recital of KCA's claim that she had engaged in consensual sexual conduct with JG in KH's presence. The word computer is not mentioned in the probable cause affidavit. There is one sentence which reads:

> In the interview with the victim, she also indicated that she had been communicating with Joesph through social networking sites and she indicated that her friend had also been communicating with him through the same sites.

The probable cause affidavit did not in any way relate any use of any computer at JG's residence to this alleged social network communication. Social network communication is effectuated through the social networking site's server, not through any program on a stand alone computer. Communications via social networking sites remain within the domain system of the social networking site, and are not associated or downloaded to a particular computer terminal. If law enforcement wanted to see if JG had communicated with either KH or KCA via social networking sites, they would have been able to do so simply by accessing either girl's social networking site and with access to her username and password, reading her social networking communications that resided on the site.

drives, as well as cell phones and SIM cards and indeed the officers who executed the October 23, 2008 search warrant of JG's residence (the search warrant with its supporting affidavit being referred to herein as "SW-R-1") seized JG's computer, described in the later police inventory as a beige computer tower and cord with DVD writer, CD writer, and floppy disk drive, collected by Detective Sgt. C. Sasser, collected from an upstairs office in the residence.

That same day, October 23, 2008, the same officers obtained a second search warrant for the search of JG himself (for DNA samples) and for his cell phones (hereinafter referred to as "SW-Def+Ph-1"). The affidavit in support of this search warrant was completely lacking in any probable cause to seize JG's cell phones.[4]

Among the phones purportedly seized under SW-Def+Ph-1 was an Apple iPhone. SW-Def+Ph-1 authorized the following property or person to be seized:

1) Joseph M. Guarascio (DOB 5/11/64)

───────────────────

[4] The probable cause affidavit of SW-Def+Ph-1 alleged in pertinent part:

On October 22, 2008 and (*sic*) interview was conducted with the 14 year old's friend. In the interview the friend indicated that she [the 17 year old friend] had been communicating through text messaging with Joseph Guarascio

This was not probable cause of a crime or evidence of a crime, therefore it was not probable cause to seize any cell phone belonging to Guarascio.

2) DNA to include (2) buccal swabs from the mouth

3) any celluar (*sic*) deivce (*sic*) to include all SIM cards

On October 27, 2008, officers from the North Carolina State Bureau of Investigation ("NCSBI"), who had joined the case, obtained a search warrant from a state magistrate judge to conduct a search of the contents of JG's Apple iPhone (hereinafter referred to as "SW-iPh"). There was nothing to support probable cause for the search of JG's Apple iPhone in the affidavit for SW-iPh. The probable cause affidavit for SW-iPh recited that the attesting officer had a background in violations involving federal and state *narcotics* laws and seizures related to narcotics trafficking and money laundering. This segued into a statement that:

> It is also known to the affiant the general public utilizes mobile cellular phones in the execution of day-to-day business . . . Phones are also able to store data . . .

This generic statement was followed by a repeat of the claim that JG had sexually assaulted a 14 year old at his residence and that three telephones had been seized from JG at his place of business, then concluded:

> It is the applicant's belief based on the applicant's training and experience that the suspect in this crime would use telephones, photographs, videos, and text messaging and mail systems for the purpose of the crime of sexual assault. The suspect would have probably maintained a list of telephone numbers, text messages, photographs, videos, and or emails to and from the victim(s).

11

This affidavit was totally devoid of probable cause to search the cell phones seized from JG, in particular the Apple iPhone.

However, JG's Apple iPhone was searched and that resulted in the discovery of a digital picture of an adult woman standing in a bathroom, naked. This photo was then used to go back to KCA and reinterview her on October 29, 2008, and she was asked whether she had seen such a picture on JG's computer. She claimed she had. The NCSBI agent then used this information, which derivatively had been obtained from the illegal search of the iPhone, which in turn had been illegally seized in the first place, to support an affidavit for the search of the hard drive of the computer that had been illegally seized under the first search warrant. This information was provided to a state magistrate judge who then issued a search warrant on October 30, 2008 to search the hard drive of the computer already seized. ("SW-C-2") The computer, which had been seized by officers of the North Hanover, N. C. Sheriff's office had been turned over to the Federal Bureau of Investigation ("FBI"), apparently without any court order authorizing this action. Agents of the FBI were then requested by the NCSBI (again, without court authorization) to conduct a forensic analysis of the computer.

This analysis of JG's computer disclosed that an external hard drive had been attached to it. Using this information, including the information from the follow-up

interview of KCA about the bathroom picture, NCSBI agents again applied for a second search warrant for JG's residence on November 4, 2008 (herein referred to as "SW-R-2") to search for a possible external hard-drive which had not been found during the first search.   SW-R-2 was executed November 4, 2008 and and external hard drive was seized at the residence.   This hard drive was then searched by FBI agents (without any court order other than the state search warrant directed to the NCSBI agents), and six video clips were found which were of JG and KH engaging in consensual sexual activity.   These six video clips were the evidentiary basis for the single count information to which JG pled guilty in this case.

Guarascio was represented in the United States District Court by attorney Mark E. Edwards, Esq. out of Durham, N.C. for purposes of waiver of indictment and plea. Attorney Edwards discussed the possibility of a motion to suppress with Guarascio, but only perfunctorily, advising Guarascio that a motion to suppress had no merit. Guarascio acquiesced in his counsel's advice and elected on advice of counsel to plead guilty to the single count information charging him production of child pornography, rather than litigating a motion to suppress.

Had counsel instead advised Guarascio that a motion to suppress had potential merit, even if counsel had not assured Guarascio that it was assured success, Guarascio would have persisted in a plea of not guilty and insisted on litigating a

13

motion to suppress and if need be, taking such steps as might have been necessary to preserve for appeal any adverse ruling on a motion to suppress.

## FACTS IN SUPPORT OF GROUND TWO

Guarascio was charged in a single count information with production of child pornography in violation of 18 U.S.C. § 2251(a) and (d). The information alleged:

> In or about May, 2008, in the Eastern District of North Carolina, the defendant, JOSEPH MICHAEL GUARASCIO, attempted to and did employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct to wit, a computer videofile. These visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce in violation of Title 18, United States Code Sections 2251(a) and (d).

The underlying conduct consisted of Guarascio and his 17 year old girl-friend, KH, engaged in consensual sexual activity, which they digitally recorded with a digital video camera as it happened. KH was not exploited and not coerced to engage in the sexual activity, rather she did so exercising her constitutional right of association which is recognized and protected under North Carolina law. She herself wanted the video made. The sexual activity was lawful under North Carolina law. The video was not shared or distributed in any way, and there was no evidence that the video had been transported outside the privacy of Guarascio's own home.

Guarascio objected to his counsel, Mark Edwards, that as applied to him, the

14

statute was unconstitutional.  Guarascio, although not a lawyer, but a former New York City police officer, had researched the statute and found that the Sixth Circuit Court of Appeals in *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), on very similar facts had found that as applied, the statute was unconstitutional.

Guarascio wanted his lawyer to challenge the applicability of the statute to him, based on a *Corp* type argument.  His counsel refused, however, arguing that *Corp* had subsequently been impliedly overruled by *Gonzalez v. Raich*, 545 U.S. 1 (2005).

Attorney Edwards failed to consider that in legal terms, Guarascio's objection went to Guarascio's (and KH's) constitutionally protected right of privacy, that is, that a voluntarily made video recording of consensual, legal sexual activity between an adult and a seventeen year old girlfriend, when the video recording is not moved or distributed outside the privacy of the home, is protected by a constitutional right of privacy.

Had Guarascio's counsel explained to Guarascio that the core argument that should be made to attack the application of the statute to Guarascio was one based on his constitutionally protected right of privacy, and that there was no appellate authority on point rejecting this argument, Guarascio would have insisted on a legal challenge to the application of the statute to his case, by way of a motion to dismiss or whatever other means might have been available, and would have insisted on

15

litigating this issue, rather than pleading guilty without preserving his right to make such a challenge.

## FACTS IN SUPPORT OF GROUND THREE

Guarascio was charged in a single count information with production of child pornography in violation of 18 U.S.C. § 2251(a) and (d). As noted above, the information alleged:

> In or about May, 2008, in the Eastern District of North Carolina, the defendant, JOSEPH MICHAEL GUARASCIO, attempted to and did employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct to wit, a computer videofile. These visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce in violation of Title 18, United States Code Sections 2251(a) and (d).

The activity involved in making the video recording all took place in Guarascio's own home, and the video recording never left Guarascio's home. The video recording was not in fact actually transmitted or transported in interstate commerce, nor was there any intent or plan that it be transmitted or transported in interstate commerce, therefore neither of the alternative bases for this element[5] was

---

[5] When we say "this element," we are referring to the interstate commerce element of the offense under 18 U.S.C. § 2251(a). Although charged under 2251(d) as well as (a), the offense clearly did not qualify under subsection (d), and it would appear that the inclusion of subsection (d) in the plea agreement and charging document was simply a draftsman's error, which no one looked at carefully enough to discover.

satisfied, and Guarascio is actually innocent of the charged offense.

The factual basis for the plea stipulated only that the computer (or components of it) on which the video recording was found, and the video camera, had traveled in interstate commerce. Counsel and the Court overlooked the fact that proof that the camera or computer had moved in interstate commerce alone was not sufficient to establish the offense, rather the Government had to additionally prove that Guarascio knew or had reason to know that thereafter the visual depiction itself would be transmitted or transported in interstate commerce.

At no time did Guarascio's counsel discuss with him this aspect of the elements of proof required of the charge, and had his counsel explained the elements as described herein, Guarascio would not have pled guilty to the charge, instead Guarascio would have insisted on a legal challenge to the application of the statute to his case, by way of a motion to dismiss or whatever other means might have been available, and would have insisted on litigating this issue, rather than pleading guilty without preserving his right to make such a challenge.

The District Court ordered the Government to file a response. [Doc. 32] The Government filed a motion to dismiss. [Doc. 33] The District Court granted the Government's motion to dismiss as to grounds two and three but ordered the case to go forward on ground three. [Doc. 39]

17

In deciding to initially proceed further on ground one, the District Court stated:

> Another good-faith exception occurs when an officer "rel[ies] on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotations omitted). This exception applies when, "assum[ing] that there was not a substantial basis for finding probable cause," the warrant contained such deficiencies that the officer's mere reliance on it was unreasonable. *United States v. Andrews*, 577 F.3d 231, 236 n.l (4th Cir. 2009); see *United States v. Doyle*, 650 F.3d 460, 470 (4th Cir. 2011). Guarascio has plausibly alleged that, although the officers had probable cause to investigate Guarascio's alleged sexual assault of a minor in his home, probable cause did not exist to seize and search his computer, video camera, and hard drive. See [D.E. 29] 2-11. "[E]vidence of child molestation alone does not support probable cause to search for child pornography." *Doyle*, 650 F.3d at 472. Moreover, Guarascio has plausibly alleged that, under the totality of the circumstances, probable cause was so lacking that reliance on the warrant was objectively unreasonable. *See, e.g. Doyle*, 650 F.3d at 476 (Duncan, J., concurring); *United States v. DeQuasie*, 373 F.3d 509, 520 (4th Cir. 2004).

[Doc. 39, p. 5]

The District Court's July 23, 2013 Order allowing ground one to go forward contained the seeds of its later analytical error in ultimately denying relief on the failure to discuss or file a motion to suppress on the grounds argued by Guarascio in his 2255 petition:

> Guarascio's plausible allegations of a meritorious Fourth Amendment issue are necessary but not sufficient to establish a Sixth Amendment ineffective assistance claim. See *Kimmelman*, 477 U.S. at 382.[1] Under *Strickland's* performance prong, the court must consider the decision not to file a motion to suppress within the context of the numerous tactical

18

decisions made by counsel. See *Strickland*, 466 U.S. at 689. The performance prong is satisfied here only if Edwards's failure to inform Guarascio accurately about the prospects of a motion to suppress was an objectively unreasonable decision in light of Edwards's strategy. At this stage, the court is unable to analyze the strategy behind the decision not to file a motion to suppress or inform Guarascio about the possible grounds for such a motion.

> [1] The court does not reach the merits of the Fourth Amendment issue. Whether Guarascio's plausible allegations will satisfy the ultimate burden of proof is a decision for another day.

[Doc. 39, p. 6]

The District Court denied relief as to grounds two and three, stating:

Guarascio now argues that Edwards should have investigated another as-applied constitutional challenge on the grounds "that a voluntarily made video recording of consensual, legal sexual activity between an adult and a seventeen year old girlfriend, when the video recording is not moved or distributed outside the privacy of the home, is protected by a constitutional right to privacy." [D.E. 28] 13. The Sixth Amendment right to effective counsel "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982); see *Lewis v. Wheeler*, 609 F.3d 291, 310 (4th Cir. 2010). Guarascio cites no case law from the Supreme Court or the Fourth Circuit in which a challenge such as he proposes has succeeded. Even if support for this novel argument could have been cobbled together from existing precedent, Edwards's failure to raise the issue and to push legal boundaries does not amount to objectively unreasonable performance. *See, e.g. Lewis*, 609 F.3d at 310; *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983). Thus, Guarascio fails to plausibly allege unreasonable performance by Edwards, and his second claim fails.

In his third ground for relief, Guarascio alleges that he is actually

19

innocent of the offense because the government failed to prove a required element and Edwards provided ineffective assistance by failing to detect the error. See [D.E. 28] 15-16; [D.E. 29] 15-21. Guarascio argues that, in prosecutions under 18 U.S. C. § 2251 (a), "[p ]roof that the [child pornography] was produced or transmitted using material or [means] that had themselves traveled interstate is not a stand alone alternative method of proving the interstate commerce element." [D.E. 29] 17. That argument, however, conflicts with a plain reading of the statutory text, which provides for just such a method of proving the interstate nexus. See 18 U.S.C. § 2251(a); *United States v. Malloy*, 568 F.3d 166, 169-71 (4th Cir. 2009); *Forrest*, 429 F.3d at 76. During Guarascio's Ru1e 11 colloquy, the government's factual basis for the guilty plea included information that Guarascio' s computer, which was used to store the child pornography video, and his video camera, which was used to produce the video, traveled in interstate commerce. See Arraignment Tr. 14. Thus, the government proved the interstate commerce element of the offense and Edwards's performance was reasonable. See id. Accordingly, Guarascio fails to allege actual innocence and ineffective assistance of counsel in connection with the interstate commerce element of the offense, and his third claim fails.

[Doc. 39, pp. 7-8]

The Government filed a further response - a memorandum of law in support of

a motion for summary judgment and an affidavit from Guarascio's prior counsel.

[Doc. 46] On the basis of this pleading and affidavit, the District Court then granted

summary judgment for the Government [Doc. 47] on ground one stating:

Edwards is a highly experienced criminal defense attorney. See Edwards Aff. ¶ 1. When Edwards was appointed to represent Guarascio in connection with an on-going federal child pornography investigation, Guarascio "was facing numerous state charges for sexual offenses involving a minor. He [also] faced potential federal prosecution for multiple charges related to [manufacturing] child pornography." Id. ¶ 3.

20

The Assistant U.S. Attorney handling the criminal case told Edwards that if Guarascio would enter a guilty plea to a violation of 18 U.S.C. § 2251(a) and (d), then the state prosecutor would dismiss all of Guarascio's pending charges, or if Guarascio pleaded guilty in state court, then no federal charges would be filed. Id.

Edwards considered whether to file a motion to suppress the evidence seized pursuant to the state-court search and seizure warrants in Guarascio's federal case. See id. ¶ 4. During the course of his representation, Edwards communicated with Hicks, Guarascio's counsel on the state charges. See id. Hicks provided Edwards a copy of Guarascio's state-court file, and Edwards thoroughly reviewed all of its contents, including the motion to suppress Hicks had filed in the state case and the order denying that motion to suppress. See id.; [D.E. 46-2] (December 18, 2008, Motion to Suppress in *State of North Carolina v. Guarascio*, Superior Court, New Hanover County, 08 CRS 63204-06, 63633-34); [D.E. 46-3] (March 26, 2009, Order in *State of North Carolina v. Guarascio*, Superior Court, New Hanover County, 08 CRS 63204-6, 63633-34). Notably, in state court, Hicks moved to suppress the evidence seized pursuant to the search and seizure warrants based on the alleged use of false information in the affidavits in support of the warrants and lack of probable cause. See [D.E. 46-2, 46-3]. These are the same grounds that Guarascio now raises in his section 2255 motion.[6] See [D.E. 28] 5-11; [D.E. 39] 4-6. Furthermore, on February 11, 2009, and March 23, 2009, the New Hanover County Superior Court held an evidentiary hearing on the motion to suppress. See [D.E. 46-3] 1. The New Hanover County Superior Court concluded that even absent the allegedly "false information," "the affidavits for each search warrant did provide a sufficient basis for the Magistrate's issuance of the search warrants on October 23, 2008." Id. 6. The New Hanover County Superior Court also concluded that even absent the allegedly "false

_____

[6] This is not correct. As the District Judge had previously written in the July 23, 2013 Order allowing ground one to go forward, Guarascio's suppression argument in his 2255 petition was that the affidavit was completely lacking in probable cause and the District Court at that time found that argument to be "plausible."

information," "the search warrants ... were supported by probable cause" and "[t]he searches were reasonable and were conducted pursuant to valid search warrants." ld. Edwards independently researched the issues and came to the same conclusion. See Edwards Aff. ¶¶ 4-7.

Edwards discussed the issues surrounding the search and seizure warrants with Guarascio. See id. Edwards's discussions with Guarascio about a possible motion to suppress took place in the context of a plea offer from the Assistant U.S. Attorney that would resolve both the federal investigation and the on-going state-court proceedings. Edwards knew that if Guarascio rejected the federal plea offer, he faced prosecution in both state and federal court. Id. Edwards also knew that even if he succeeded with a motion to suppress in federal court, Guarascio still faced prosecution in state court, which had denied the motion to suppress. Id. Ultimately, Edwards gave Guarascio his best assessment and described that assessment and Guarascio's options to him:

> If he accepted the plea agreement to the federal charge, the state charges would be dismissed. If the information about his employee led to the filing of charges, there was a possibility of the Government filing a motion for a sentence reduction. If he entered a plea to the state charges, no federal charges would be filed. Ifhe rejected the plea to the federal charge, and he did not prevail on a motion to suppress he faced federal and state prosecution. My advice to him was that he should accept the plea to the state charges and avoid federal court. I feared that given the number of images and videos of child pornography found on his computer he faced the real possibility of a longer sentence in federal court than he was being offered on his state charges. Mr. Guarascio ultimately opted to accept the Government's plea offer. He signed a waiver of indictment and pleaded guilty to a bill of information. His state charges were dismissed. I believe that he fully understood his options and made his choice based the dynamics of his situation.

Id. ¶ 7. In providing advice to Guarascio, Edwards considered that the motion to suppress had failed in state court, would likely fail in federal court, and advised Guarascio not to pursue a motion to suppress in federal court. Edwards provided this advice as part of a larger strategy to secure the lowest sentence possible under the law for Guarascio, who was facing very serious charges in state and federal court, facing very strong evidence, and facing a lengthy prison sentence in each forum. See Id. ¶¶ 4-7.

The Sixth Amendment does not require counsel to raise every non-frivolous argument on a client's behalf. See, e.g., *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). By definition, the Sixth Amendment does not require counsel to raise a meritless argument. See, e.g. *Nelson v. United States*, Nos. 5:10-CR-350-BR, 5:12-CV-609-BR, 2012 WL 5879750, at *2 (E.D.N.C. Nov. 21, 2012) (unpublished). The proposed federal motion to suppress was meritless.[7] Moreover, in light of the unsuccessful motion to suppress in state court, Edwards's advice was reasonable, particularly as part of the larger overall strategy of minimizing Guarascio's time in prison. See, e.g. *Premo*, 131 S. Ct. at 740-43; *Bobby*, 558 U.S. at 11-12; *Knowles*, 556 U.S. at 126--27; *Florida v. Nixon*, 543 U.S. 175, 187-92 (2004); *Kimmelman v. Morrison*, 477 U.S. 365,382 (1986); *Strickland*, 466 U.S. at 687-91. On this record, given that Edwards thoroughly researched the legal and factual issues about the state-court warrants and provided reasonable advice in the context of a sound overall legal strategy, Edwards's decision not to file a motion to suppress was a strategic choice that is

---

[7] An *ipse dixit* - - yet this is the heart of the 2255 petition; the District Court provides no analysis whatsoever for this conclusion. The conclusion is unsupported by any legal analysis *despite the fact that the very same District Court had allowed this issue to go forward against a motion to dismiss after concluding that the very same issue had "plausible merit.*" If the issue in fact were meritless then the District Court could have granted the Government's first motion to dismiss without requiring the Government to respond further and without requiring an affidavit from Guarascio's trial counsel as to any strategic reasons he had for not raising this issue. If the issue were meritless, it would have served no purpose to inquire of Guarascio's counsel's strategic reason for not filing it.

"virtually unchallengeable." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quotation omitted). Thus, no genuine issue of material fact exists concerning *Strickland*'s performance prong.

Alternatively, Guarascio has failed to demonstrate that he would not have pleaded guilty in federal court, but for counsel's alleged failure to seek to suppress the evidence seized pursuant to the state-court search and seizure warrants. See, e.g. *Bobby*, 558 U.S. at 12; *Knowles*, 556 U.S. at 127-28; *Strickland*, 466 U.S. at 699-700. Thus, no genuine issue of material fact exists concerning *Strickland*'s prejudice prong, and the government is entitled to summary judgment.

[Doc. 47, pp. 6-9]

The District Court denied relief as to grounds two and three, stating:

Guarascio now argues that Edwards should have investigated another as-applied constitutional challenge on the grounds "that a voluntarily made video recording of consensual, legal sexual activity between an adult and a seventeen year old girlfriend, when the video recording is not moved or distributed outside the privacy of the home, is protected by a constitutional right to privacy." [D.E. 28] 13. The Sixth Amendment right to effective counsel "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982); see *Lewis v. Wheeler*, 609 F.3d 291, 310 (4th Cir. 2010). Guarascio cites no case law from the Supreme Court or the Fourth Circuit in which a challenge such as he proposes has succeeded. Even if support for this novel argument could have been cobbled together from existing precedent, Edwards's failure to raise the issue and to push legal boundaries does not amount to objectively unreasonable performance. *See, e.g. Lewis*, 609 F.3d at 310; *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983). Thus, Guarascio fails to plausibly allege unreasonable performance by Edwards, and his second claim fails.

In his third ground for relief, Guarascio alleges that he is actually innocent of the offense because the government failed to prove a

24

required element and Edwards provided ineffective assistance by failing to detect the error. See [D.E. 28] 15-16; [D.E. 29] 15-21. Guarascio argues that, in prosecutions under 18 U.S.C. § 2251 (a), "[p]roof that the [child pornography] was produced or transmitted using material or [means] that had themselves traveled interstate is not a stand alone alternative method of proving the interstate commerce element." [D.E. 29] 17. That argument, however, conflicts with a plain reading of the statutory text, which provides for just such a method of proving the interstate nexus. See 18 U.S.C. § 2251(a); *United States v. Malloy*, 568 F.3d 166, 169-71 (4th Cir. 2009); *Forrest*, 429 F.3d at 76. During Guarascio's Rule 11 colloquy, the government's factual basis for the guilty plea included information that Guarascio's computer, which was used to store the child pornography video, and his video camera, which was used to produce the video, traveled in interstate commerce. See Arraignment Tr. 14. Thus, the government proved the interstate commerce element of the offense and Edwards's performance was reasonable. See id. Accordingly, Guarascio fails to allege actual innocence and ineffective assistance of counsel in connection with the interstate commerce element of the offense, and his third claim fails.

[Doc. 39, pp. 7-8]

Guarascio filed a timely notice of appeal and this informal opening brief has followed in a timely manner by which Guarascio is seeking a certificate of appealability as to all three grounds. [Doc. 49]

25

## SUMMARY OF THE ARGUMENTS

The district court erred when it dismissed Guarascio's motion under 28 U.S.C. § 2255, and this Court should grant a certificate of appealability to review the issues presented in Guarascio's motion. At the very least, Guarascio makes the required "debatable" showing as to each of the three issues.

In ground one, Guarascio set forth what the District Court initially found to be a "plausible" ground for a motion to suppress - a careful and detailed analysis of the series of search warrants which established that there was no probable cause for the search warrant which led to the seizure of the video clip upon which the federal prosecution was predicated. Relying on *Hill v. Lockhart*, Guarascio alleged that his former counsel who represented him in his guilty plea, had never advised him of this legal argument and had he been advised of this defense, he would not have pled guilty but would have insisted on filing the motion to suppress on the basis set forth in his § 2255 petition.

The District Court required the Government to respond, which it did with an affidavit from the prior trial counsel who was the subject of Guarascio's ineffective assistance claims. Notably the former counsel did not claim to have identified the legal argument Guarascio had presented in his § 2255 petition. Instead he merely stated that he had reviewed a motion to suppress that had been filed in a state case

26

relating to the same warrants (but which did not make the arguments made by Guarascio in his § 2255 petition), had done some research on "the suppression issue," and advised Guarascio to plead guilty and not file a suppression motion.

The District Court found this to be a "reasonable strategic choice" and denied Guarascio relief on ground one.  But, there can be no strategic choice based on a strategy which was never considered by counsel; even had it been considered, and counsel does not make such a claim, it cannot be a reasonable strategic choice to forego a dispositive motion to suppress;[8] strategic choice is not the proper analytical model to apply to a *Hill v. Lockhart* claim in any event; under *Hill v. Lockhart* the issue is whether a defendant would have pled guilty or not if he had been advised of a possible defense (motion), not whether the motion or defense would have succeeded; Guarascio's former counsel never claimed to have discussed the suppression issue raised in Guarascio's § 2255 petition with Guarascio, therefore Guarascio is entitled to relief so long as his claim that he would have insisted on asserting the defense rather than plead guilty is credible, and that assertion is not contradicted by anything in the record, instead it is supported inferentially by the

---

[8] That there were pending state charges allegedly dismissed as part of the federal plea does not affect this conclusion; the former counsel's own affidavit states that in his opinion Guarascio *faced less time if convicted in state court than in federal court*.

former counsel's affidavit and by the strength of the legal issue which would have been set forth in the motion to suppress, an issue which would have been entirely dispositive of his charges.

In ground two Guarascio argues that he is protected from criminal prosecution for making a video clip of himself and his seventeen year old girlfriend engaged in consensual and lawful sexual activity in his own bedroom, when that video clip never left his bedroom. Under North Carolina law, it was lawful for Guarascio to engage in consensual sexual activity with a seventeen year old female. Under *Stanley v. Georgia*, *Virginia v. Black* and *Lawrence v. Texas*, Guarascio had a recognized constitutional right of privacy which forbids his prosecution.

The District Court erred in applying *Engle v. Isaac* to deny relief on this claim on the basis that Guarascio's trial lawyer could not be found ineffective for purposes of a *Hill v. Lockhart* claim, for not "cobbling together" this argument in a motion to dismiss. No decision of this Court has ever applied *Engle v. Isaac* to a *Hill v. Lockhart* claim. Whether there was or was not binding precedent at the time of the plea in support of this motion to dismiss argument is not determinative of a *Hill v. Lockhart* claim, which turns on whether defense counsel discussed a *possible defense* with a defendant. With the tools available for this defense, it should at a minimum have been discussed with Guarascio to permit Guarascio to make an informed and

28

knowing decision whether to plead guilty or not. A competent criminal defense attorney would have done so.

In any event, Guarascio argues that the issue is controlled by *Stanley*, *Virginia* and Lawrence.

Alternatively, the Supreme Court permits federal courts to consider issues in habeas proceedings which otherwise are procedurally barred if to fail to do so would constitute a fundamental miscarriage of justice. Guarascio has argued in ground three that he is actually innocent of the charge, which is the standard applied to determine fundamental miscarriage of justice.

As to ground three, Guarascio argues from a plain reading of the statutory text that the charging statute requires the Government prove that Guarascio caused or intended to cause the video clip to be transported in interstate commerce. Because the Government did not and could not prove this element, Guarascio is actually innocent of the offense.

## ARGUMENTS

## I. THIS COURT SHOULD ISSUE A CERTIFICATE OF APPEALABILITY TO DETERMINE WHETHER GUARASCIO IS ENTITLED TO A POST-CONVICTION REMEDY FOR THE THREE GROUNDS RAISED HEREIN.

### A. STANDARD OF REVIEW.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, "[i]f the [district] court denies a certificate [of appealablity], a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Guarascio submits this request for a certificate of appealability.

### B. GUARASCIO SATISFIES THE STANDARD FOR ISSUING A CERTIFICATE OF APPEALABILITY.

Under 28 U.S.C. § 2253(c)(2), a certificate of appealablity may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2012). The term "constitutional right" in § 2253 includes "federal rights," because any attempt by Congress to enact a "wholesale strip of authority" for federal appellate courts to review decisions is of "questionable constitutionality" and requires a "clear statement" of intent to divest jurisdiction that § 2253 lacks. *Gomez v. Dretke*, 422 F.3d 264 (5th Cir. 2005). A petitioner satisfies the "substantial showing" standard by demonstrating that reasonable jurists would find that an assessment of his claims is debatable. *Miller-El v. Cockrell*, 537 U.S. 322,

30

338 (2003). A petitioner is not required to show that any jurist would agree with him. Id. The issues need only be "adequate to deserve encouragement to proceed further." Id. at 338.

The questions presented are far more than *debatable*. In fact, as explained below, Guarascio should prevail and should be awarded relief. Reasonable jurists would find Guarascio's claims "debatable," at the very least. Consequently,Guarascio has made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). This Court should issue the certificate of appealability.

## II. THE DISTRICT COURT ERRONEOUSLY DENIED GUARASCIO'S MOTION FOR RELIEF UNDER 28 U.S.C. § 2255.

## A. STANDARD OF REVIEW.

This Court "reviews de novo the district court's conclusions of law underlying its denial of [a petitioner's] § 2255 motion." *United States v. Fulks*, 683 F.3d 512, 516 (4th Cir. 2012), cert. denied, 2013 WL 5508101 (U.S. Oct. 7, 2013). The Supreme Court has held that habeas review is available for claims of constitutional error, as well as for a claimed error of non-constitutional law that "constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428

31

(1962)).

**B.    GROUND ONE:   GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO THAT THERE WERE STRONG GROUNDS UPON WHICH TO FILE A MOTION TO SUPPRESS THE CHILD PORNOGRAPHY ("CP") SEIZED FROM GUARASCIO, WHICH SERVED AS THE BASIS OF THE CHARGE TO WHICH HE PLED GUILTY, AND HAD COUNSEL PROPERLY EXPLAINED THE APPLICATION OF THE GOVERNING SUPPRESSION LAW TO THE FACTS OF HIS CASE, GUARASCIO WOULD HAVE INSISTED ON FILING A MOTION TO SUPPRESS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.**

### SW-R-1 - THE FIRST SEARCH OF THE RESIDENCE

The first search warrant in this investigation (SW-R-1) suffered two distinct infirmities: (1) on its face, it was lacking in probable cause to seize JG's computer, and (2) due to a *Franks*[9] problem, the magistrate judge had been misled into issuing the warrant irrespective of probable cause on the face of the warrant or not.

On its face, the warrant alleged sufficient facts to establish probable cause that JG had engaged in illegal sexual activity with KCA at JG's residence, thus permitting a search for evidence of that offense, but there was nothing in the affidavit to establish probable cause as to any computer at the residence.  The affidavit is notably silent with respect to computers, the word does not appear in the affidavit.

_____

[9] *Franks v. Delaware*, 438 U.S. 154 (1978).

32

Although the ultimate offense alleged almost a year later in federal court was the production of child pornography and the use of a computer in connection with that child pornography, there was no suggestion or even hint of any such conduct in this affidavit. This was not a case where KCA had alleged to the officer who prepared the affidavit that JG had shown her child pornography (or any pornography) on his computer in order to induce her to engage in similar conduct. KCA's allegation, as it was made to the sheriff's office and repeated in the affidavit, was not an allegation which would lead a magistrate to believe that evidence of the alleged offense would be found on any computer at JG's residence.

The recital at the end of the affidavit that KCA said that she and KH had communicated with JG by use of social networking sites does not, of course, support probable cause to seize a computer at JG's residence. This may be an additional *Franks* problem in any event, because if it had been true, then this could have been verified immediately by the attesting officer asking KCA and KH for their usernames and passwords and then and there at the sheriff's office logging into KCA and KH's social network pages and confirming whether JG had in fact communicated with them.

The only probative evidence would have been of JG communicating *to* KCA, not KCA posting a message on JG's social network site, if any. As the Court is

33

aware, generally the entire world can post comments or communications on social network sites - - JG could not control who posted on his site, he could only control what he posted on another site - - hence the only probative evidence would have been to find whether JG had made a posting on KCA's site. That could be determined, and documented, sitting in the detective's office. Either the officer did not do this, which was reckless disregard for the truth, or if he did it, he found nothing to corroborate the claim, and failed to disclose that to the court, which would constitute an intentional misrepresentation. It is notable that to counsel's knowledge, the discovery does not disclose any pre-arrest postings by JG to KCA, as claimed in the probable cause affidavit. This is something the officer attesting to the affidavit should have known or actually knew before making the sworn representation that JG had communicated with KCA in the search warrant affidavit.

In any event, this information would not reside on JG's computer, or any computer as such, but instead, would reside on the server off which the particular social networking site operated. The evidence, if it existed, would exist on the social network site's server and that is where a subpoena should have been directed, if there had been probable cause in the first place.

Finally, and perhaps most importantly as it relates to probable cause to seize any computer at JG's residence (or to seize his phone under the second search

34

warrant, SW-Def+Ph-1), there was no allegation that any communication that might have taken place between JG and KCA related in any way to the alleged offense, nor any allegation that there had even been any communication between JG and KCA to meet the night in question. To simply allege that JG and KCA had "communicated" at some time in the past about some unrelated matter, is not to establish probable cause that those communications could be seized from a computer in JG's residence. There was not even an attempt to related the alleged communications to the alleged crime, and as such, a warrant, even if tailored narrowly to seizure of the unspecificied communications, and not to an entire computer system, would be overbroad. Clearly the request to seize any computer is overbroad, when the object of the seizure is supposedly communications on social network pages.

Of equal importance is the *Franks* problem. When raising a *Franks* challenge to a search warrant affidavit, a defendant must show by preponderance of the evidence: one, "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and, two, that the offending information was essential to the probable cause determination. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); see also *United States v. Shorter*, 328 F.3d 167 (4th Cir. 2003).

The officers behind the search warrant had the claim of a 14 year old girl that

35

JG had masturbated her in the presence of KH. Commendably the officers were unwilling to rely upon the word of KCA alone, and having been given the name of KCA's own friend, KH, who allegedly had been an eyewitness, went to the school, got KH from school, and without KH having an opportunity to be coached or coerced by anyone involved, asked her to confirm KCA's story.

After three hours of interrogation, KH did not waiver in her denial of KCA's claim. At this point what the officers should have done was to question JG, but instead the officers prepared a knowingly false affidavit which they presented to the state magistrate to obtain the first search warrant of JG's residence. It was knowingly false because it implied that KH had corroborated KCA's story. It did this by advising the magistrate that KH was a witness to the events claimed to have happened by KCA, and that the officers had interviewed "other persons" and specifically alleged that the officers had interviewed KH, and that "all persons interviewed appeared credible and truthful" and further stating that "none of the people interviewed have any apparent motive to be untruthful . . ." In particular, the affidavit went so far as to say:

> On October 22, 2008 and (*sic*) interview was conducted with the 14 year
>
> old's friend [KH]. In the interview the friend indicated that she had
>
> been communicating through text messaging with Joesph Guarascio.

36

This allegation is important for several things it does not say. First and most importantly, this is where the officer actively misled the issuing magistrate, because he expressly told the court that he had interviewed KH, the girl who was an eyewitness to KCA's alleged molestation. He has expressly told the magistrate that she appeared credible ("all person interviewed appeared credible"). He has expressly told the magistrate judge that "there were no significant contradictions or differences . . . in the information the applicant has received from the person(s) interviewed." But he did not tell the magistrate that KH said that KCA's story was untrue.

The affidavit was knowingly false because it failed to disclose that KH had refuted KCA's allegation. It was knowingly false because it stated that all persons interviewed appeared to be credible, when in fact the only two witnesses to the time in question contradicted each other in antipodal fashion.

This was active misrepresentation as well as omission. *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate. See *United States v. Reivich*, 793 F.2d 957, 961 (4th Cir. 1986). Had the magistrate judge been informed of the true facts, he would not have been in a position to determine probable cause from the bare affidavit alone, because an affidavit which sets forth two inconsistent statements, one supporting probable cause and one refuting it, by definition cannot supply probable

37

cause.

Because of (1) the complete absence of probable cause to search the computer and (2) the officer's reckless disregard for truth and misrepresentations contained in the affidavit, the officers search and seizure cannot be upheld on good faith grounds under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### SW-Def+Ph-1 - THE SEIZURE OF THE APPLE iPHONE

The probable cause affidavits for SW-R-1 and SW-Def+Ph-1, were identical. Therefore, the arguments set forth above, are incorporated herein by this reference. Additionally, we would note that the only information in the affidavit which would have gone to the existence of a cellular phone was this one line:

On October 22, 2008 and (*sic*) interview was conducted with the 14 year old's friend [KH]. In the interview the friend indicated that she had been communicating through text messaging with Joesph Guarascio.

This line has to be carefully examined. It was the only basis upon which a cellular phone could have been seized.

In addition to the misrepresentations it implied, as argued above, it did not allege that *KCA* had ever communicated with JG by text messaging. There would be no evidentiary value to the claimed fact that JG and *KH* had communicated by text messaging, yet that is all it says. However, when you also consider the *Franks*

38

omissions - - that KH had refuted, not corroborated, KCA's claim, then had the magistrate been told the truth, that KH refuted KCA, there could not have been any possible probable cause to then seize JG's cellular phone to examine his communications with KH.

At the risk of stating the obvious, there was no suggestion or even hint in the affidavit that there had been any communication between KH and JG to set up the sexual assault against KCA, or any suggestion or even hint that KH had in any way suggested that any of her communications with JG in any way would have been evidence relevant to KCA's allegation.

This affidavit, like the affidavit for SW-R-1, was based on intentional misrepresentations, and was so utterly lacking in probable cause that its execution could not be upheld under *Leon* good faith principles.

## SW-iPh - THE iPHONE SEARCH WARRANT

This search warrant was for the purpose of examining the contents of the iPhone which was illegally seized under the search warrant described above, SW-Def+iPh-1.

Because the iPhone had already been seized illegally, unless there was a sufficient break in the chain of illegality even a valid subsequent search warrant would not save the seizure, but the subsequent search warrant was neither, that is,

39

neither a break in the chain of illegality nor a valid warrant unto itself. The affidavit for SW-iPh repeated in very abbreviated fashion the same claims as the first two warrants, nothing new, and failed to correct any of the former misstatements. Therefore it fails as a break in the chain of illegality.

Additionally, it contains absolutely nothing of evidentiary value to support probable cause to search the iPhone. It says in that respect as follows:

> It is the applicant's belief based on the applicant's training and experience[10] that the suspect in this crime would use telephones . . . and text messaging systems for the purposes of the crime of sexual assault. The suspect would have probably maintained a list of . . . text messages . . . to and from the victim(s).

What this fails to include is any claim that the alleged victim had made any such allegation. This was not a case of a missing sex crime victim, as to whom the police and courts were forced to surmise what might have happened leading up to the commission of the crime, this was a case where the young girl who had made the accusation was at hand to be questioned, had been questioned, and had not made any

---

[10] The affidavit elsewhere recites his experience as having been limited to narcotics related offenses. Hence his claim of knowledge based on experience is belied by his own affidavit. The magistrate could not have relied upon a claim of belief based on training and experience, when the experience was exclusively in narcotics related crimes and this offense was totally unrelated to narcotics.

such allegation.  Instead, only her friend, KH, had claimed to have engaged in text messaging with JG, and she had denied any crime had been committed.

Again, as above, because there were the same *Franks* misrepresentations, which remained uncorrected, and a total lack of probable cause, the court cannot sustain this seizure under *Leon* good faith.

The fruit of this search was the discovery of a photograph on the iPhone *of an adult woman*, naked, in a bathroom.  This photo was then taken back to KCA for a follow up interview, which resulted, after she was shown the photo, in her claim that she thought JG had shown her that photo on his computer.

## SW-C-2 - THE COMPUTER SEARCH WARRANT

This information was then presented to the magistrate in an affidavit for a search warrant (SW-C-2) to search the computer which had already been illegally seized under the first search warrant.

We adopt the arguments made above as to each of the preceding warrants in this chain of illegal searches, and argue that nothing had broken the chain of illegality and indeed, that it was the fruit of the illegal search of the illegally seized iPhone which resulted in the re-interview of KCA.  Therefore, that interview and its results were tainted by the chain of illegality - - that is, the interview itself, and in particular the use of the photo of the naked adult woman to question KCA about any photos she

41

had seen, derived from the fruit of an illegal search.

In addition, the magistrate was again misled, by implication, that the photo found on the iPhone was a photo of child pornography ("CP"). It was not. The iPhone photo was clearly of an adult female, yet the magistrate was led to believe that it was CP when that was not true. This implication resided in the repeated use of the term "girl" and "naked girl" when referring to this picture and the questioning of KCA, who claimed that she saw this picture of this naked "girl" on JG's computer. The implication was then made express that the officer was speaking of evidence of CP when the affidavit proceeded to allege that computers allowed individuals to view and collect child pornography.[11]

This did not constitute probable cause to search the contents of JG's computer. Even if the information provided were not fruit of the poisonous tree, it simply was not evidence of the crime for which the search warrant was authorized N. C. General Statutes, § 14-202.1:[12]

§ 14-202.1. Taking indecent liberties with children

---

[11] This affidavit also purported to rest on training and experience, yet the officer's recital of his training and experience discloses no training or experience relevant to the allegations or requested search.

[12] It is only a second class misdemeanor in N.C. to display harmful material to a minor under N.C. General Statutes, § 14-190.14. The magistrate was not asked to issue a search warrant to prosecute a second class misdemeanor.

42

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

(b) Taking indecent liberties with children is punishable as a Class F felony.

This warrant too fails the *Leon* good faith test.

## SW-R-2 - THE SECOND SEARCH OF THE RESIDENCE
## THE MISSING HARD DRIVE

The search of the computer under SW-C-2 resulted in the discovery of the existence of an external hard drive other than those already seized under SW-R-1. Suspecting that this hard drive must have somehow been overlooked during the execution of the first search warrant, the officers sought permission to reenter JG's residence to find the missing external hard drive.  The affidavit for SW-R-2 relied upon and contained the same information presented in the earlier affidavits, and evidence derived therefrom, therefore was tainted by the prior illegal seizures, with nothing to dispel the taint from the prior illegal seizures.  It was this search warrant which resulted ultimately in the discovery of the video clip which was used to

43

prosecute Guarascio in this case.

For the reasons noted as to each of the warrants above, this search cannot be validated under *Leon* good faith.

### *Hill v. Lockhart*

To prove ineffective assistance in the context of a guilty plea, the defendant must satisfy two requirements: (1) "that counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The failure of Guarascio's counsel to identify the above problems with the search warrants in this case and to explain these problems to Guarascio constituted ineffective assistance of counsel under *Strickland*. A reasonably competent criminal defense attorney could and would have identified the above suppression issues and explained them to Guarascio. Had Guarascio had the weaknesses identified above explained to him, he would have insisted on litigating a motion to suppress, rather than plead guilty without reserving his right to preserve this issue on appeal.

## THE DISTRICT COURT'S ORDER DENYING RELIEF ON GROUND ONE

The District Court's July 23, 2013 Order allowing ground one to go forward

contained the seeds of the District Court's later analytical error. [Doc. 39, p. 5-6]

> Guarascio has plausibly alleged that, although the officers had probable cause to investigate Guarascio's alleged sexual assault of a minor in his home, probable cause did not exist to seize and search his computer, video camera, and hard drive. See [D.E. 29] 2-11. "[E]vidence of child molestation alone does not support probable cause to search for child pornography." *Doyle*, 650 F .3d at 4 72. Moreover, Guarascio has plausibly alleged that, under the totality of the circumstances, probable cause was so lacking that reliance on the warrant was objectively unreasonable. *See, e.g. Doyle*, 650 F.3d at 476 (Duncan, J., concurring); *United States v. DeQuasie*, 373 F.3d 509, 520 (4th Cir. 2004).

> .   .   .

> Guarascio's plausible allegations of a meritorious Fourth Amendment issue are necessary but not sufficient to establish a Sixth Amendment ineffective assistance claim. See *Kimmelman*, 477 U.S. at 382.[1] Under *Strickland's* performance prong, the court must consider the decision not to file a motion to suppress within the context of the numerous tactical decisions made by counsel. See *Strickland*, 466 U.S. at 689. *The performance prong is satisfied here only if Edwards's failure to inform Guarascio accurately about the prospects of a motion to suppress was an objectively unreasonable decision in light of Edwards's strategy.* At this stage, the court is unable to analyze the strategy behind the decision not to file a motion to suppress or inform Guarascio about the possible grounds for such a motion.

> [1] The court does not reach the merits of the Fourth Amendment issue. Whether Guarascio's plausible allegations will satisfy the ultimate burden of proof is a decision for another day.

45

[Doc. 39, pp. 5-6 (emphasis supplied)]

The analytical error is that if the motion to suppress would have been dispositive of the case (and it would have been, because the case was built exclusively on the results of the execution of the search warrants), then there could be no reasonable strategic choice to forego a motion to suppress. Therefore, it is only possible to decide this issue by deciding the merits of Guarascio's claim which the District Court never did.

However, it is not necessary for Guarascio to prevail on this ground by establishing that his motion to suppress would have succeeded. This is a *Hill v. Lockhart* claim, and the issue under *Hill v. Lockhart* is whether defense counsel explained a specific potential defense (in this case, a motion to suppress which would have been a factual and legal defense), and if not, would the defendant have insisted on asserting the defense had he known of its existence. Under *Hill* the defendant does not have to prove that the omitted defense or claim would have succeeded. Whether it would have been successful or not is only a factor to apply in determining the credibility of the defendant's assertion that he would have insisted on raising the defense, had he known about it, instead of pleading guilty.

Nowhere in the affidavit of Guarascio's former defense counsel does he claim to have discussed or explained the issue presented in ground one of this proceeding.

46

[Doc. 46-1] Instead, all that Guarascio's former counsel claims to have done with respect to a possible motion to suppress was to obtain the *state* court file in which a motion to suppress had been filed on *Franks grounds*, and been denied. The only further assertion made is that "I also researched the issue of possible suppression. As I recall the issue of the search warrant was a topic of discussion at most of our attorney client meetings." We credit former counsel's candor in not claiming to have found the issue complained of in ground one and in not claiming to have presented this issue to Guarascio.[13]

Only if former counsel had discussed *this issue* with Guarascio and after such discussion Guarascio elected to waive this defense and accept the federal plea agreement, would it be correct to deny relief on ground one.

The District Court's order, however, confuses concepts and denied relief on the basis that counsel had engaged in a reasonable strategic choice in recommending a plea of guilty instead of filing a motion to suppress. But strategic choice only applies *if counsel had advised Guarascio of the legal argument set forth in ground one and former counsel neither claimed to have done so nor did the District Court find that he had done so.*

---

[13] Former counsel does not claim to have discovered the suppression issue in ground one of the § 2255 petition and decided, after research and review, that it was not likely to succeed. He simply did not think of the issue.

47

Strategic choice cannot be predicated on a strategy which counsel never considered nor can a *Hill* claim be denied when the issue the petitioner complains of was never discussed with the petitioner.

Finally, the District Court alternatively concluded that Guarascio had failed to demonstrate that he would not have pleaded guilty but for counsel's failure. This conclusion is not supported by the record. The District Court does not share its reasoning behind that conclusion, but for *Hill v. Lockhart* purposes the Court should have considered the merits of the issue which was foregone by the plea. The District Court summarily states [Doc. 47, pp. 8-9] that "[t]he proposed motion to suppress was meritless" but this appears to be referring not to the motion to suppress argued in Guarascio's § 2255 petition, but to the *Franks* motion argued in state court. Clearly the argument made in ground one of the § 2255 petition was not meritless.

Guarascio repeats, however, that to prevail on his *Hill v. Lockhart* claim he does not have to prove that the motion would have been meritorious. The strength of the claim is only a factor to be considered in determining the credibility of Guarascio's sworn claim that he would have insisted on filing the motion to suppress had this argument been presented to him. Given the strength of the argument, it is only reasonable to conclude that he would have insisted on raising it rather than plead

to a fifteen year minimum mandatory sentence.[14]

In conclusion, there can be no strategic choice based on a strategy which was never considered by counsel; even had it been considered, and counsel does not make such a claim, it cannot be a reasonable strategic choice to forego a dispositive motion to suppress;[15] strategic choice is not the proper analytical model to apply to a *Hill v. Lockhart* claim in any event; under *Hill v. Lockhart* the issue is whether a defendant would have pled guilty or not if he had been advised of a possible defense (motion), not whether the motion or defense would have succeeded; Guarascio's former counsel never claimed to have discussed the suppression issue raised in Guarascio's § 2255 petition with Guarascio, therefore Guarascio is entitled to relief so long as his claim that he would have insisted on asserting the defense rather than plead guilty is credible, and that assertion is not contradicted by anything in the record, instead it is supported inferentially by the former counsel's affidavit and by the strength of the

---

[14] Further inferential support for Guarascio's claim is that in the former counsel's affidavit the former counsel acknowledges that the issue of the search warrant came up in almost all of his conferences with Guarascio. Guarascio wanted to find a legal defense to the charge, but instead, all he heard from his counsel was that any proposed motion to suppress would fail. [Doc. 46-1]

[15] That there were pending state charges allegedly dismissed as part of the federal plea does not affect this conclusion; the former counsel's own affidavit states that in his opinion Guarascio *faced less time if convicted in state court than in federal court*.

49

legal issue which would have been set forth in the motion to suppress, an issue which would have been entirely dispositive of his charges.

**C. GROUND TWO: GUARASCIO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO ADVISE GUARASCIO OF HIS RIGHT TO CHALLENGE THE APPLICATION OF THE CHARGING STATUTE TO HIM ON THE UNIQUE FACTS OF HIS CASE ON RIGHT TO PRIVACY GROUNDS, AND HAD HE DONE SO, GUARASCIO WOULD HAVE INSISTED ON FILING AN APPROPRIATE MOTION CHALLENGING THE CHARGE ON PRIVACY GROUNDS, RATHER THAN PLEAD GUILTY WITHOUT PRESERVING HIS RIGHT TO APPEAL SUCH A CHALLENGE.**

Guarascio had a Constitutionally protected right of privacy which was violated by his prosecution in this case. See *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); *United States v. Windsor*, 133 S.Ct. 2675 (2013), and *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Guarascio was involved in an intimate relationship with KH, a young woman at least 17 years and 3 months old at the time in question.[16] Under North Carolina law, as the Government conceded, this relationship was legally protected. N.C. General Statutes, § 14-27.7A.

----

[16] The date the video recording was made was stated in law enforcement reports to be May, 2008. Guarascio thinks that it was made at a later date. Assuming it was made, worst case, as the state has argued in May, then KH was 17 years and 3 months old. *She was 17 years and 8 months old at the time the video recording was discovered and Guarascio arrested*.

50

The Government's interest in prosecuting child pornography is not sufficiently compelling, as applied to the facts in Guarascio's case, to permit the Governmental interest to override Guarascio's Constitutional right of privacy as to sexual activity that the state has chosen to legislatively authorize. *Virginia v. Black*, 538 U.S. 343 (2003). Guarascio had a constitutional right to be free from governmental intrusion into the privacy of his home. He had a protected right to record and view in the privacy of his home a video recording of a legally protected sexual activity, when that video recording was never taken outside the home and never removed from the zone of heightened privacy of his home.

Therefore, the prosecution under 18 U.S.C. § 2251(a), as applied to Guarascio's unique facts, is unconstitutionally overbroad. The statute must be narrowed to exclude prosecution of one in Guarascio's circumstances. *Osborne v. Ohio*, 495 U.S. 103 (1990).

Guarascio's counsel may well have been correct in light of *Raich* to advise Guarascio to plead guilty rather than raise a *Corp* challenged, but his counsel was ineffective in not explaining to Guarascio that the unique facts of his case did present a viable constitutional privacy challenge. This type argument had appeared already in the Fourth Circuit, on weaker facts, in *United States v. White*, 2 Fed.Appx. 295, 2001 WL 51014 (4th Cir. 2001), where the privacy argument was rejected only

51

because the material had in fact been sent outside the defendant's home. See also *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005) (privacy claim rejected on somewhat similar facts, but distinguished by material having been transmitted outside the home over the internet).

Had counsel explained the privacy challenge that was available to Guarascio, Guarascio would have insisted on litigating this issue, and would have insisted on filing a motion to dismiss rather than plead guilty, and insisted in preserving this issue for appeal. Therefore, under *Hill v. Lockhart*, Guarascio is entitled to withdraw his plea.

## THE DISTRICT COURT'S ORDER DENYING RELIEF ON GROUND TWO

The District Court denied relief citing *Engle v. Isaac*, 456 U.S. 107, 134 (1982), *Lewis v. Wheeler*, 609 F.3d 291, 310 (4th Cir. 2010)[17] and *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983). But these were all federal habeases challenging state convictions, and the issue was not what constitutes ineffective assistance of counsel for a *Hill v. Lockhart* claim of a federal prisoner, but was whether a procedural default could be overcome by a counsel's failure to raise an

---

[17] *Lewis* is particularly inapt, because in *Lewis* the issue was whether a state court had failed to correctly apply controlling Supreme Court precedent and the deferential standard of review under the AEDPA to state court adjudications of federal claims.

issue as to which existing case law provided the tools to make the claim. In that context the Supreme Court (and this Court) has held that petitioner's counsel's failure to raise the claim is not sufficient to overcome procedural default in state court. A diligent search of Westlaw discloses *no case from the Supreme Court or any Circuit Court of Appeal applying the Engle v. Isaac standard to a federal inmate's Hill v. Lockhart claim under 28 U.S.C. 2255.*[18] There is a reason why the *Engle* standard would not apply to a *Hill v. Lockhart* claim - with a *Hill* claim the question is not whether there is binding precedent to succeed in a motion to suppress, rather the question is what defenses could be asserted and whether had the counsel advised the defendant of *possible* defenses, the defendant would have insisted on filing the motion rather than pleading guilty. For this analysis it matters not whether there is binding precedent controlling the resolution of the potential defense. Therefore the case law which looks to whether the exact question had been precisely answered by the Supreme Court is not on point and not relevant to the inquiry. Rather, the question is whether a competent defense attorney, having if not controlling precedent (and we argue there was) at least the tools to make the argument, performs deficiently in not advising the client of the possible defense. Without this information the

---

[18] The more apt citation would have been to *United States v. McNamara*, 74 F.3d 514 (4th Cir. 1996), but *McNamara* did not involve a *Hill v. Lockhart* claim, nor has any case in this Circuit citing *McNamara*.

defendant's choice to plead guilty or not has not been a knowing and intelligent choice. This further distinguishes the *Engle* cases, because the question under *Hill* is a question about the decision to plead guilty or not, and that is a question uniquely committed to the defendant, not to counsel; counsel does not get to pretermit discussion of a controlling legal issue and thereby make the client's plea choice for him.

But if the foreseeability standard of ineffective assistance did apply, then *Stanley v. Georgia* was the existing authority for Guarascio's claim. *Stanley* was a criminal prosecution under an obscenity statute. The Court held that the First Amendment prohibited prosecution and punishment for the obscenity possessed within the privacy of one's bedroom. *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) and *Virginia v. Black*, 538 U.S. 343 (2003) established that the protected right of privacy of sexual activity in one's own bedroom trumps criminal prosecution. This was well settled at the time of Guarascio's plea. This was not a case of having to "cobble together" a claim; the claim was there plain on the face of the facts of the case and plain on the face of existing Supreme Court precedent.

In any event, the Supreme Court held the door open to claims which otherwise would be barred if to do so would result in a miscarriage of justice:

> The "cause"-and-"prejudice" exception of the *Francis* rule will afford an adequate guarantee, we think, that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice.

*Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. 2497, 2508 (1977).

> In certain extraordinary circumstances, a federal court has the equitable power to consider an issue notwithstanding the existence of a procedural bar. See *Carrier*, 477 U.S. at 495-96, 106 S.Ct. at 2649.[19] A federal court may do so "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 496, 106 S.Ct. at 2649.

*Johnson v. Singletary*, 938 F.2d 1166, 1175 (11th Cir. 1991).

Guarascio meets the fundamental miscarriage of justice standard as that standard has been established by the Supreme Court:

> This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. In *Hill v. United States*, 368 U.S. 424, 429 (1962), for example, we held that that "collateral relief is not available when all that is shown is a failure to comply with the formal requirements" of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested that the appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '(i)t . . . present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' Id., at 428, 82 S.Ct., at 471 (internal quotation marks omitted). The Court did not suggest that any line could be drawn on the basis of whether the claim had its source in the Constitution or in the 'laws of the United States.'

---

[19] *Murray v. Carrier*, 477 U.S. 478 (1986).

In this case, the petitioner's contention is that the decision in *Gutknecht v. United States*, as interpreted and applied by the Court of Appeals for the Ninth Circuit in the *Fox* case after his conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order. *If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under s 2255. Therefore, although we express no view on the merits of the petitioner's claim, we hold that the issue he raises is cognizable in a s 2255 proceeding.*

*Davis v. United States*, 417 U.S. 333, 346-347, 94 S.Ct. 2298, 2305 (1974) (emphasis supplied).

The Supreme Court found that Davis met the fundamental miscarriage of justice standard *based on the nature of the claim, not the merits of the claim.* That is, if the claim is such that if accepted would constitute a fundamental miscarriage, then the petitioner is allowed to go forward *without a predetermination of the merits of the claim.*[20] Accordingly, for the foregoing reasons, Guarascio is entitled to issuance of a COA on this issue.

---

[20] Notably the District Court in denying relief on Ground Three, *infra*, in which Guarascio argued that he was actually innocent of the charge (based on his interpretation of the statutory elements), the District Court *did not dispute that if Guarascio's argument had merit that he would be actually innocent.*

56

**D.      GROUND THREE: GUARASCIO IS ACTUALLY INNOCENT OF THE CHARGED OFFENSE, 18 U.S.C. § 2251(a) AND (d), BECAUSE AN ESSENTIAL ELEMENT OF THIS OFFENSE IS THAT EITHER (1) THE DEFENDANT KNEW OR HAD REASON TO KNOW THAT THE VISUAL DEPICTION WOULD BE TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE (AND IF CHARGED UNDER THE KNOWN OR HAD REASON TO KNOW PRONG, THE VISUAL DEPICTION HAD TO ALSO HAVE BEEN PRODUCED OR TRANSMITTED USING MATERIALS THAT HAD MOVED IN INTERSTATE COMMERCE), OR (2) THE VISUAL DEPICTION IN FACT ACTUALLY WAS TRANSMITTED OR TRANSPORTED IN INTERSTATE COMMERCE, AND NEITHER ALTERNATIVE WAS SATISFIED IN GUARASCIO'S CASE, AND GUARASCIO'S COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE CHARGE ON THIS BASIS.**

The proper interpretation of § 2251(a) must begin with the plain language of the statute, and absent ambiguity or a clearly expressed legislative intent to the contrary, the statute must be given its plain meaning. *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993). "Section 2251 plainly "makes illegal the inducement of children into sexual conduct for the purpose of creating visual depictions of that conduct" *and transportation of the depictions across state lines*. *United States v. Smith*, 795 F.2d 841, 845 (9th Cir.1986), cert. denied, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987)." *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993).

Section 2251(a) provides as follows:

§ 2251. Sexual exploitation of children

57

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), *if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.*

The italicized language, which is the express interstate commerce element in this statute, and how to understand it, is what is at issue here and for ease in referring to the specific clauses of the statute, we will insert editorially, clause numbers for reference only:

[A] if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, [1] *if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer*, or [2] if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

58

The information in this case treated clause (A)(1) above as if it were a stand alone alternative interstate commerce element. That is clearly a misreading of the plain meaning of the statute. The rules of English grammar dictate that the sentence has to be understood as setting forth two dependent subclauses (1), and (2) to the primary clause, (A). This is manifested by the insertion of the "or" before subclause (2). There is no "or" before subclause (1). If there had been, then the Government's reading of the statute might have some attraction, but without it, and it is not there, the only way to construct the meaning of the sentence is to see subclauses (1) and (2) as alternative conditional predicates to the primary clause (A).

In other words, the interstate commerce element set forth in § 2251(a) requires either knowledge or reason to know that the CP will be transmitted or transported interstate combined with proof that the CP was produced or transmitted using interstate materials or means, or that the CP in fact actually be transported or transmitted interstate. Proof that the CP was produced or transmitted using material or mans that had themselves traveled interstate is not a stand alone alternative method of proving the interstate commerce element.

No Fourth Circuit case has set forth the elements of a Section 2251(a) offense, but the holdings in more than one case imply that an essential element of § 2251(a) is proof either that the defendant knew or should have known that the visual depiction

would be transmitted or transported in interstate commerce, or that the visual depiction actually was transmitted or transported in interstate commerce. See e.g., *United States v. Husband*, 119 Fed.Appx. 475, 2005 WL 44942 (4th Cir. 2005) (rejecting statute of limitations defense holding that statute of limitations did not commence until completion of last element of offense, and last element of offense where adult made a video of a child was *not until the video in fact had actually crossed state lines*); see also *United States v. Crews*, 28 Fed.Appx. 247, 2002 WL 86843 (4th Cir. 2002) (holding that Government proved actual transportation across state lines of home made CP video, thereby satisfying interstate commerce element).

If the Government's view in Guarascio's case of the interstate commerce element were correct, then *Husband*'s interstate commerce element would have been satisfied upon his manufacturing of the CP video using a camera or film manufactured out of state. But if that had been so, *Husband*'s statute of limitations defense would have been affirmed. The Fourth Circuit rejected his limitations defense expressly holding that the interstate commerce element had not been satisfied until the video was actually transported across state lines.[21]

---

[21] In the *Husband* case, as here, the video was made for private enjoyment, apparently with no plan that it would be transported across state lines. Only later the family moved to another state and the video was then discovered after it had crossed state lines. Hence on the facts of the case there was no evidence to prove that he knew or should have known the video would be transported across state lines when

Likewise, in *Crews*, if the Government's view were correct as presented in Guarascio's information, that the mere use of materials produced out of state to manufacture the CP video were sufficient proof of the interstate commerce element, then the *Crews* decision makes no sense, because just as in *Husband*, the mere manufacture of the video (and we submit it is a fair inference that just as it was true for Guarascio, so too it would have been true for *Crews*, another North Carolina case, that his video camera and video recording materials had to have been manufactured out of state) was not alone sufficient to establish the interstate commerce element, rather the Government had to prove, in Crews' case, actual transport across state lines (again, as in *Husband*, the home made video had first been made without any plan to transport across state lines, hence the "knew or should have known" element was not available).

The Government did not and could not prove this essential element of the charge. Guarascio is actually innocent of the offense he pled guilty to, 18 U.S.C. § 2251(a), (see *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), for review of the sufficiency of the evidence to meet the constitutional standard of proof beyond a reasonable doubt: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

---

it was manufactured.

61

of fact could have found the essential elements of the crime beyond a reasonable doubt." Id., at 319, 99 S.Ct., at 2789), and it was ineffective assistance of counsel to permit him to plead to a charge that the Government could not prove.

Finally, because of the failure of proof of the interstate commerce element, the further effect is that the Court *lacked jurisdiction* to convict Guarascio of this offense.

## THE DISTRICT COURT'S ORDER DENYING RELIEF ON GROUND THREE

The District Court rejected ground three finding that Guarascio's claim conflicts with a plain reading of the statute. The District Court offered no explanation of that conclusion, nor is there one to offer. At best one could argue that the statute is ambiguous and would support both the District Court's view and Guarascio's view, but it cannot be fairly said that Guarascio's interpretation conflicts with a plain reading of the statutory language.

In further support of its view, the District Court cited *United States v. Malloy*, 568 F.3d 166, 169-71 (4th Cir. 2009); and *United States v. Forrest*, 429 F.3d 73, 76 (4th Cir. 2005). Neither case is on point. *Malloy* stated its issue as follows: "Malloy next argues that § 2251(a) as applied to his case exceeds Congress's authority under the Commerce Clause." *Malloy* at 179. *Malloy* then in turn cited *Forrest* for its conclusion that Malloy's claim failed:

62

In *United States v. Forrest*, this court upheld a defendant's convictions for production and possession of child pornography which itself had never crossed state lines, but which was produced using cameras that were manufactured outside the state. 429 F.3d 73, 78–79 (4th Cir.2005). In doing so, we cited the Supreme Court's holding in *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), which "reaffirmed the long-standing principle that the Commerce Clause empowers Congress to regulate purely local intrastate activities, so long as they are part of an 'economic class of activities that have a substantial effect on interstate commerce.'" *Forrest*, 429 F.3d at 78 (citing *Raich*, 545 U.S. at 16, 125 S.Ct. 2195). This court held that "[b]ecause Congress possessed a rational basis for concluding that the local production and possession of child pornography substantially affect interstate commerce, 'the de minimis character of individual instances arising under the statute is of no consequence.'" *Forrest*, 429 F.3d at 79 (citing *Raich*, 545 U.S. at 17, 125 S.Ct. 2195).

*United States v. Malloy*, 568 F.3d 166, 179 (4th Cir. 2009).

Guarascio has not raised a *Raich* claim – Guarascio does not challenge the authority of Congress to regulate intrastate commerce. Therefore neither *Malloy* nor *Forrest* are on point.

Guarascio's statutory interpretation argument is inferentially supported by the cases cited above, none of which the District Court attempted to distinguish. Surely Guarascio's argument is at least fairly debatable among jurists of reason, sufficient to authorize issuance of a COA.

64

## CONCLUSION

Based on the foregoing, Petitioner Guarascio respectfully submits that he has made a substantial showing of the denial of a constitutional right as to the above issues and is entitled to the issuance of a certificate of appealability.

THE LAW OFFICE OF
WILLIAM MALLORY KENT


**s/ William Mallory Kent**
WILLIAM MALLORY KENT
Florida Bar No. 0260738
1932 Perry Place
Jacksonville, Florida 32207
(904) 398-8000 Telephone
(904) 348-3124 Facsimile
kent@williamkent.com Email
www.williamkent.com Webpage

## REQUEST FOR ORAL ARGUMENT

Gurascio respectfully requests oral argument on the grounds that it is warranted by the serious issues raised in this appeal.

**CERTIFICATE OF COMPLIANCE**

1.   This brief does not comply with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 16,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).   Counsel is concurrently filing a motion for permission to file a brief in excess of the word count limitation.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Wordperfect in 14pt Times New Roman.

    s/ William Mallory Kent
William Mallory Kent
Counsel for Appellant Guarascio

67

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 14th day of April, 2014, I caused this Informal Opening Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:  Counsel for Appellee

_____s/ William Mallory Kent_____
WILLIAM MALLORY KENT
